Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5755 | **DATE** | 11/7/2001 |
| **CASE TITLE** | Ladegaard vs. Hard Rock Concrete Cutters, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiffs' motion to strike defendants' fourth affirmative defense, void the releases, and require notice be sent regarding the void releases [57-1] is granted. The court orders the parties to prepare a notice for court approval informing all potential plaintiffs who have been provided a release that such release is unenforceable in its entirety and otherwise advising them of the opportunity to participate in the lawsuit. Status hearing is set for 11/26/01 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 2 number of notices | **Document Number** |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | NOV 09 2001 date docketed | 75 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | 11/7/2001 date mailed notice | |
| | Copy to judge/magistrate judge. | | |
| MD courtroom deputy's initials | | 01 NOV -7 PM 5:11 Date/time received in central Clerk's Office | MD mailing deputy initials |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SEAN LADEGAARD, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 00 C 5755 |
| | ) | |
| HARD ROCK CONCRETE | ) | |
| CUTTERS, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED
NOV 0 9 2001

## MEMORANDUM OPINION AND ORDER

Presently before the court is plaintiffs' motion to strike defendants' fourth affirmative defense (which asserts the defense of release as to certain potential class members), void the releases, and require defendants to send a court-approved notice to all potential class members indicating that the releases are void. Plaintiffs attach a copy of the release and letter that defendants sent to individual potential class members. The letter states, in part:

> It has come to our attention that there has been a claim that some employees have not been paid properly, including for time spent in safety meetings.
>
> We believe that the Company has fairly and properly compensated employees for all hours worked. Nevertheless, we want to be sure that all employees are satisfied with their experience at the Company. We therefore have decided to offer you some additional compensation for your work at the Company.
>
> To that end, we have sent you the enclosed agreement. As you can see, it provides that you be paid a sum of money in return for signing a release. . . .

(*See* Pls.' Mem. in Supp. of Mot., Ex. A.) The attached release states:

1

# RELEASE

This Release is entered into between _____ ("Employee"), and Hard Rock Concrete Cutters, Inc. and its owners (collectively, the "Company").

Within fourteen days of Employee's execution and delivery of this Release, the Company will pay Employee the sum of $___, less applicable tax withholdings.

In return, Employee fully releases, acquits, and forever discharges the Company from any and all charges, actions, causes of actions, claims, grievances, damages, costs, expenses, attorneys' fees or any other liability relating to claims for overtime or straight-time compensation under the Fair Labor Standards Act, the Illinois Minimum Wage Law, and/or the Illinois Wage Payment and Collection Act through the date of the execution of this Release. Employee does not release any other claims against the Company, such as claims for workers' compensation.

Employee acknowledges and understands that:

- if Employee signs this Release, Employee will have given up any right to sue or be any part of any suit for back wages under the laws described above;

- Employee has the right to consult an attorney before executing this Release;

- Employee does not have to sign this Release, and the Company will treat and regard Employee the same way whether or not Employee signs this Release; and

- Employee is entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance. Employee has not been coerced, threatened, or intimidated into signing this Agreement.

If this release is held invalid or unenforceable, Employee will tender back to the Company the payment made in consideration for this Release.

(*Id.*)

## DISCUSSION

On a motion to strike, "the court may order stricken from any pleading any insufficient defense . . . ." Fed. R. Civ. P. 12(f). "Affirmative defenses will be stricken only when they are insufficient on the face of the pleadings." *Heller Fin., Inc.* v. *Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (citation omitted). "Ordinarily, defenses will not be struck if they are sufficient as a matter of law or if they present questions of law or fact." *Id.* (citation omitted). Plaintiffs argue that the defense should be stricken because the releases are void as a matter of law in that (1) the releases were sent in conjunction with notice to the class, and notice is within the purview of the court; (2) waiver of claims is prohibited under the Fair Labor Standards Act ("FLSA"), Illinois Minimum Wage Law ("IMWL"), and Illinois Wage Payment and Collection Act ("IWPCA"); and (3) the releases were obtained through misrepresentation or coercive threat of economic sanctions.

Plaintiffs' first argument is unavailing. For support, plaintiffs rely on a minute order in *O'Brien* v. *Encotech Constr. Servs., Inc.*, No. 00 C 1155, in which Judge Gottschall prohibited defendant in that case from soliciting or accepting further releases because the court had not had the opportunity to determine whether the notice accompanying the release was fair. (Minute Order, October 6, 2000.) Similarly, in this case, after plaintiffs made an emergency motion to restrain defendants' communications with potential class members, this court resolved the motion by noting, on the record, defendants' agreement not to contact potential class members about the suit pending disposition of the motion for class certification. (*See* Minute Order, 00 C 5755, October 5, 2000.) Although Judge Gottschall, in her October 6 order, recognized that defendant's conduct in sending out the letter and releases threatened the court's ability to handle

3

notice to the class in an accurate and fair manner, on a later motion by plaintiff in *O'Brien*, she did not invalidate the releases for that reason. *See O'Brien v. Encotech Constr. Servs., Inc.*, ___ F.R.D. ___, 2001 WL 1181236, *2 (N.D. Ill. Sept. 19, 2001) (noting that in general a party in class litigation may attempt to settle with individual potential class members) (citing *In re Painewebber Ltd. Partnerships Litig.*, 147 F.3d 132, 137 (2d Cir. 1998)). Therefore, plaintiffs' first argument fails. Plaintiffs' third argument, that the releases are void because they were obtained by misrepresentation or threat, is also unavailing at this stage. Releases can "be proved invalid through 'clear and convincing evidence' that the agreements were products of 'fraud, duress, mutual mistake or unconscionability.'" *O'Brien*, 2001 WL 1181236 at *2 (quoting *Gavery v. Altheimer and Gray*, 1996 WL 521400, *3 (N.D. Ill. Sept. 11, 1996)). Plaintiffs admit, however, that the "methods, promises, and coercion utilized to obtain the 'Releases' are presently unknown as Defendants have not responded to any discovery'" (*see* Pls.' Mem. at 2), and plaintiffs' assertion that they "have established that the 'Release' has gross legal misrepresentations," *id.* at 5, does not, without more, suffice to meet plaintiffs' burden that the releases were obtained by fraud or duress.

Plaintiffs' second argument has merit, however. Plaintiffs argue that waivers of FLSA, IMWL and IWPCA claims are void as a matter of public policy. Defendants rightly concede that the releases are void as a matter of law as to the FLSA claims. *See* Defs.' Resp. at 5, n.1 ("Defendants do not assert that any class members have released FLSA claims[.]"). *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945); *Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) ("Courts . . . have refused to enforce wholly private settlements" of FLSA claims.) (citation omitted); *O'Brien*, 2001 WL 1181236 at *2 (same). Defendants

contend, however, that the releases are valid as to the IMWL and IWPCA claims and request that the court sever the invalid portion and/or give effect to the remaining portion of the agreements, namely, the release of the IMWL and IWPCA claims.

Plaintiffs argue that the releases are invalid as to the IMWL and IWPCA claims as well as the FLSA claim. The IMWL prohibits employers from employing persons "for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than 1 ½ times the regular rate at which he is employed." 820 ILCS 105/4a (1999). Plaintiffs point to language in the IMWL, which states

> [i]t is against public policy for an employer to pay to his employees an amount less than that fixed by this Act. Payment of any amount less than herein fixed is an unreasonable and oppressive wage, and less than sufficient to meet the minimum cost of living necessary for health. Any contract, agreement or understanding for or in relation to such unreasonable and oppressive wage for any employment covered by this Act is void

820 ILCS 105/2, and contend that the releases are a contract for an "unreasonable and oppressive wage" because they are for less than that required by the IMWL and, as such, are void. The IWPCA provides that employers must pay "every employee all wages earned during the [payroll] period" 820 ILCS 115/3 (1999), and prohibits deductions from wages or final compensation unless the deductions meet one of the enumerated conditions for deductions found at 820 ILCS 115/9. IWPCA regulations set forth the method by which an employer must provide notice of disputed deductions to the employee, see 56 Ill. Admin. Code § 300.930, and prohibit an employer from using the "[a]cceptance by an employee of a disputed paycheck [as] . . . evidence that the employee has agreed to the deduction in question." *Id.* at § 300.920.[1] Plaintiffs assert

---

[1] Although not cited by plaintiffs, 820 ILCS 115/9 (which was amended July 20, 2001 but did not change the portion quoted below) also states (similar to § 300.920) that:

5

that the unpaid wages they seek to recover under the IWPCA do not fit into any one of the permitted deduction exceptions, that defendants did not avail themselves of the sole method for withholding deductions, that acceptance of a disputed paycheck is not evidence of agreement to the deduction and, as such, any agreement about the unpaid wages (i.e. in the form of the release) is void. Plaintiffs further contend that, as a general matter, the IMWL and IWPCA represent social legislation intended to provide minimum standards to employees and that because these statutes embody the public interest, they cannot, as a matter of law, be waived. (*See* Pls.' Mem. in Supp. of Mot. at 4-5) (analogizing to the Supreme Court's analysis of the nonwaivable nature of FLSA claims in *Brooklyn Sav. Bank* v. *O'Neil*, 324 U.S. 697, 704 (1945)).

Although Judge Gottschall concluded in *O'Brien* that releases of the IMWL and IWPCA claims were not void as a matter of law and therefore invalidated only the portion of the release pertaining to the FLSA claims, *see O'Brien*, 2001 WL 1181236, at *3, this court respectfully disagrees. The court agrees with *O'Brien* that under Illinois law, which both parties concede applies to the determination of whether the releases are void, it is a general rule that "[p]ublic policy favors the peaceful and voluntary resolution of claims and when there has been such resolution, a presumption of its validity is created." *Blaylock* v. *Toledo, Peoria & Western R.R. Co.*, 43 Ill. App. 3d 35, 356 N.E.2d 639, 641 (3d Dist. 1976); *see also O'Brien*, 2001 WL

---

> In case of a dispute over wages, the employer shall pay, without condition and within the time set by this Act, all wages or parts thereof, conceded by him to be due, leaving to the employee all remedies to which he may otherwise be entitled as to any balance claimed. The acceptance by an employee of a disputed paycheck shall not constitute a release as to the balance of his claim and any release or restrictive endorsement required by an employer as a condition to payment shall be a violation of this Act and shall be void.

1181236 at *2 (quoting *Gavery*, 1996 WL 521400, at *2) (quoting *Blaylock, supra*).[2] However, while recognizing the freedom to contract, it is also the rule in Illinois that agreements that are contrary to public policy as reflected in the laws of the state or have a "tendency to injure the public welfare" are unenforceable. *Holstein v. Grossman*, 246 Ill. App. 3d 719, 616 N.E.2d 1224, 1229 (1st Dist. 1993) (citation omitted). "The question of whether a contract is enforceable under considerations of public policy is a conclusion of law and turns on the particular facts and circumstances of each case." *Id.* (internal citations omitted.) "The overriding objective in interpreting a statute is to ascertain and give effect to the intent of the legislature. To ascertain the legislature's intent, we first look to the plain language of the statute. In addition to the language chosen by the legislature, the court should consider the reason for the law, the evil to be remedied, and the purpose to be obtained thereby." *See People ex. rel. the Dep't of Labor v. K. Reinke, Jr. and Co.*, 319 Ill. App. 3d 721, 746 N.E.2d 12, 15 (1st Dist. 2001) (internal citations omitted).

Although the statutory language cited by plaintiffs indicating that agreements under the IMWL for an "unreasonable and oppressive wage" are void, 820 ILCS 105/2, and that "[a]cceptance by an employee of a disputed paycheck [is not] . . . evidence that the employee has agreed to the deduction in question," § 300.920, supports plaintiffs' position that the releases at

---

[2]The court in *O'Brien* then reasoned that it was "an open question whether, in the context of the IMWL, plaintiffs' wages were unreasonable or oppressive within the meaning of the law or whether, in the context of the IWPCA, defendants' practices violated the IWPCA or failed to fall within an exception created by the Act," and noting that plaintiffs failed to cite any judicial or statutory language prohibiting private settlements of the state law claims, held that the releases under the IMWL and IWPCA were not invalid as a matter of law. *O'Brien*, 2001 WL 1181236 at *3. This court is not aware whether the plaintiffs in *O'Brien* had presented the court with the argument, as they have here, that the public policy underlying the IMWL and IWPCA, like the FLSA, bars the releases.

issue are void as a general matter, the language does not expressly so provide.[3] Moreover, as observed by both plaintiffs and defendants there is a dearth of case law either invalidating or upholding a release under either of these statutes.[4] Where there is "an absence of Illinois decisions dealing with a particular labor law issue, federal decisions dealing with a substantially similar law, while not controlling, may be helpful and relevant." *Bernardi v. Village of North Pekin*, 135 Ill. App. 3d 589, 482 N.E.2d 101, 102 (3d Dist. 1985) (citing, *inter alia*, *Bd. of Governors v. Rothbardt*, 98 Ill. App. 3d 423, 424 N.E.2d 742 (4th Dist. 1981)).

The Supreme Court's analysis in *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945), finding that FLSA claims are nonwaivable is instructive. The FLSA is substantially similar to the IMWL in requiring a minimum wage and maximum hours. *See* 29 U.S.C. §§ 206-07. In *Brooklyn Sav. Bank*, the Court was asked to determine whether a party's written waiver of his right to liquidated damages under the FLSA barred a subsequent action to recover those damages. The Court noted the general rule that "[w]here a private right is granted in the public interest to effectuate a legislative policy, waiver of a right so charged or colored with the public interest will not be allowed where it would thwart the legislative policy which it was designed to effectuate." *Id.* at 704. Noting that the question of whether a private right created by federal statute may be waived depends on the intention of Congress as manifested in the statute, *id.* at 705, the Court reviewed the statutory language, the legislative reports and debates for that intent.

---

[3]Notably, however, the provision not cited by plaintiff in 820 ILSC 115/9, *supra* note 2, does appear to expressly forbid release of IWPCA claims.

[4]The court found one case in which a plaintiff had argued that under the language of IWPCA, 820 ILCS 115/9 (*see supra* note 2), the release he signed was void as a matter of law. However, the court did not decide the issue, instead finding that plaintiff had not adequately alleged a claim under IWPCA. *See Hurd v. Wildman, Harrold, Allen and Dixon*, 303 Ill. App. 3d 84, 707 N.E.2d 609, 613-14 (1st Dist. 1999).

Finding that the question had not been "specifically considered and resolved by Congress," the Court "resort[ed] to a broader consideration of the legislative policy behind [the liquidated damages] provision as evidenced by its legislative history and the provisions in and structure of the [FLSA]." *Id.* at 705-06. It found that the legislative history of the FLSA

> ... show[ed] an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours ... [and t]he statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required compulsory legislation to prevent private contracts on their part which endangered national health and efficiency....

*Id.* at 706. In light of this purpose, the Court concluded that to allow waiver of statutory wages by agreement or waiver of the employee's right to liquidated damages "would nullify the purposes of the Act." *Id.* at 707; *see also Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) ("This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act."); *Walton*, 786 F.2d at 306 (The FLSA "is designed to prevent consenting adults from transacting about minimum wages and overtime pay. Once the Act makes it impossible to agree on the amount of pay, it is necessary to ban private settlements of disputes about pay. Otherwise the parties' ability to settle disputes would allow them to establish sub-minimum wages.") (citing *Lynn's Food Stores, Inc. v. United States*, 697 F.2d 1350, 1352 (11th Cir. 1982)).

The intent of the Illinois legislature as manifested in the legislative policy section of the IMWL indicates that releases of claims under the IMWL would frustrate its purpose. The legislative policy section of the IMWL provides in full:

The General Assembly finds that the existence in industries, trades or business, or

9

branches thereof, including offices, mercantile establishments and all other places of employment in the State of Illinois covered by this Act, of conditions detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency and general well-being of workers, leads to labor disputes, and places burdens on the State, and all other subordinate political bodies thereof, to assist and supply necessary moneys and goods to workers and their families to aid them to exist on a minimum budget for their needs, and thus places an unnecessary burden on the taxpayers of this State. Therefore, it is the policy of this Act to establish a minimum wage standard for workers at a level consistent with their health, efficiency and general well-being; to safeguard such minimum wage against the unfair competition of wage and hour standards which do not provide such adequate standards of living; and to sustain purchasing power and increase employment opportunities.

It is against public policy for an employer to pay to his employees an amount less than that fixed by this Act. Payment of any amount less than herein fixed is an unreasonable and oppressive wage, and less than sufficient to meet the minimum cost of living necessary for health. Any contract, agreement or understanding for or in relation to such unreasonable and oppressive wage for any employment covered by this Act is void.

820 ILCS 105/2. Not only is the language of the first paragraph of this section strikingly similar to the language found in the "Congressional finding and declaration of policy" section of the FLSA, 29 U.S.C. § 202(a),[5] but the purpose of the IMWL as set forth by Illinois courts is similar to that of the FLSA. *Compare Reinke*, 319 Ill. App. 3d 721, 746 N.E.2d at 16 ("Section 2 of the Minimum Wage Law states that the legislature was concerned about the existence of 'conditions detrimental to the maintenance of the minimum standard of living necessary for the health,

---

[5](a) The Congress finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several States; (2) burdens commerce and the free flow of goods in commerce; (3) constitutes an unfair method of competition in commerce; (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce; and (5) interferes with the orderly and fair marketing of goods in commerce. That Congress further finds that the employment of persons in domestic service in households affects commerce. (b) It is declared to be the policy of this chapter, through the exercise by Congress of its power to regulate commerce among the several States and with foreign nations, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power. 29 U.S.C. § 202(a)

efficiency and general well-being of workers.' 820 ILCS 105/2 (West 1998). Section 2 further stated that those conditions imposed upon taxpayers the 'unnecessary burden' to assist workers. 820 ILCS 105/2/(West 1998).") *with Barrentine*, 450 U.S. at 739 ("The principal congressional purpose in enacting the [FLSA] was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'") (quoting 29 U.S.C. § 202(a)). *See also DeWig v. Landshire, Inc.*, 281 Ill. App. 3d 138, 666 N.E.2d 1204, 1208 (3d Dist. 1996) (Breslin, J., dissenting) (noting similar purposes underlying Section 2 of the IMWL and Section 202 of the FLSA). Similarly, although the IWPCA contains no "legislative policy" section, it has been held that "enforcing the public policy underlying the IWPCA inures to the benefit of Illinois workers and taxpayers in precisely the way that the IMWL does." *People ex. rel Martin v. Lipkowitz*, 225 Ill. App. 3d 980, 589 N.E.2d 182, 185 (3d Dist 1992) (noting that the purpose of the IWPCA "is to ensure employees receive all earned benefits upon leaving their employer and the evil it seeks to remedy is the forfeiture of any of those benefits" and "[a]n employer's denial of benefits earned by its employees burdens the State financially and socially, such as by decreasing the tax base and potentially depleting State assistance funds") (internal quotation omitted); *see also Mueller Co. v. Dep't of Labor*, 187 Ill. App. 3d 519, 543 N.E.2d 518, 521 (4th Dist. 1989)).

Finally, like the United States Supreme Court, the Illinois Supreme Court has recognized that where the right in question is conferred for the benefit of the public at large rather than solely for the private benefit of individuals, the right is nonwaivable. *See Recht v. Kelly*, 82 Ill. 147, 1876 WL 10157, *1 (Ill. 1876) (holding that an agreement to forego the benefit of a statute

11

exempting property from levy and sale where the owner was the head of household was void because "[l]aws enacted from considerations of public concern, and to subserve the general welfare, cannot be abrogated by mere private agreement"), and like the United States Supreme Court's recognition in *Brooklyn Sav. Bank* that the FLSA embodies a public right, Illinois courts have recognized that both the IMWL and the IWPCA involve public rights. *See Reinke*, 319 Ill. App. 3d 721, 746 N.E.2d at 16 ("We believe a section 12(b) [IMWL] action asserts a right belonging to the general public. . . . The legislature likely believed an action by a State agency to enforce compliance with a wage law involved a public right . . . ."); *Martin v. Schwartz Oil*, 203 Ill. App. 3d 903, 561 N.E.2d 201, 203 (1990) ("The purpose of the IMWL is to ensure adequate wage standards for the benefit of both workers and the taxpayers, and a violation of the law is a breach of public policy. . . . The State has a clear and definite interest in enforcing this policy."); *see Lipkowitz*, 225 Ill. App. 3d 980, 589 N.E.2d at 185 (IWPCA). Indeed, the fact that both the IMWL and IWPCA authorize the Director of the Illinois Department of Labor to enforce actions under their respective statutes and to expend State resources to enforce the statutes[6] "expresse[s] the legislature's] intent to benefit the public generally." *See Lipkowitz*, 225 Ill. App. 3d 980, 589 N.E.2d at 185.

Thus, based on the similar purposes of the FLSA and IMWL (and IMWL and IWPCA) the judicial recognition that these statutes involve public rights, the long history of United States Supreme Court interpretation of the FLSA prohibiting release of such claims, and the Illinois common law rule that laws enacted to serve a public concern cannot be abrogated by mere private agreement, of which the legislature is presumed to be aware, *see Fink v. Ryan*, 174 Ill.2d

---

[6]*See* IMWL, 820 ILCS 105/12(b) & 11(d), and IWPCA, 820 ILCS 115/11.

12

302, 673 N.E.2d 281, 285 (Ill. 1996) ("Where statutes are enacted after judicial opinions are published, it must be presumed that the legislature acted with knowledge of the prevailing case law.") (quotation omitted), the court concludes that it would be against the public policy of the IMWL and IWPCA to permit the parties to release their claims thereunder, unless expressly allowed by these statutes. However, the express language of the IMWL and IWPCA, set forth *supra*, if not explicit, is at least implicitly consistent with the public policy prohibiting private releases.[7]

Defendants only argument countering the public policy is that unlike the FLSA, which expressly provides for a means by which employers can settle with and obtain releases from employees via the United States Department of Labor pursuant to section 16(c) of the FLSA,[8] the IMWL does not contain an equivalent provision,[9] and, therefore, the Illinois legislature must not have meant to prohibit employers from entering into private settlements with its employees. *See*

---

[7]Defendants also point to language in the IMWL, 820 ILCS 105/12(a), not cited by plaintiffs, that "any agreement between [an employee] and his employer to work for less than such wage is no defense to [an] action" and argue that such language "must mean that an employer and employee cannot agree prospectively that an employee will work for less than minimum wage or will waive payment of overtime compensation. It does not mean that, in face of a claim or dispute, the parties cannot settle their disputes without filing a claim in court." (*See* Defs.' Resp. at 7-8 n. 2). For the reasons set forth in the text, the court rejects defendants' argument. Nevertheless, the letter and release at issue here do not even purport to refer to a disputed claim of the particular employee signing the release (they also do not set out an agreement between the individual employee and defendant as to the amount of time worked and the amount paid for that time). The release is general and "releases . . . the Company from any and all . . . claims . . . or any other liability relating to claims for overtime or straight-time compensation . . . through the date of the execution of the release,"and the letter is addressed to "All Field Forces" and references a general "claim that some *employees* have not been paid properly, including time spent in safety meetings" apparently in reference to the class action. (*See* Pls.' Mem. in Supp. of Mot., Ex. A.) (Emphasis added.)

[8]"The Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages. . . . " 29 U.S.C. § 216(c).

[9]Neither the IMWL nor the IWPCA contains a provision for release of claims after approval by the Illinois Department of Labor, although the legislature has included such a provision with respect to the Illinois Workers Compensation Act, 820 ILCS 305/23.

13

Defs.' Resp. at 7-8 (citing, *inter alia, Walton*, 786 F.2d at 306).[10] Prior to the enactment of section 16(c) of the FLSA, the only recognized way to settle claims with an employee was through a court-approved stipulated settlement. *See generally Walton*, 786 F.2d at 306; *Lynn's Food Stores*, 679 F.2d at 1353 (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946)).

The court concludes that even if the legislature did not include an equivalent provision in the IMWL and IWPCA this does not *ipso facto* mean that the legislature meant to open the doors to all private settlements and releases. Rather, in light of the public policy behind the IMWL and IWPCA and the strong interests in protecting the equality of bargaining positions between employer and employee, the opposite conclusion is warranted, namely, that the legislature was aware of the implications attendant in limiting the means by which parties could settle, even if limiting it only to court-approved settlements. *Cf. Brooklyn Sav. Bank*, 324 U.S. at 713 ("Failure to provide a method of waiving claims under the [FLSA] can support contrary inferences, that such waivers were to be allowed or that the provisions of the Act state a settled policy which cannot be modified by private contracts. We are of the opinion that the legislative history and provisions of the Act support a view prohibiting such waiver." And even though "in individual cases, hardship may result, the restriction will enure to the benefit of the general class of employees in whose interest the law is passed, and so to that of the community at large.") (internal citation and quotation omitted). In any event, both the IMWL and the IWPCA provide

---

[10]In *Walton*, the Seventh Circuit, in describing the scheme under the FLSA, stated that "a prohibition of settlement ensures costly litigation, even though the parties might be able to compromise their dispute without subverting the principles of the [FLSA]" and noted that "Section 16(c) creates the possibility of a settlement, supervised by the Secretary [of Labor] to prevent subversion, yet effective to keep out of court disputes that can be compromised honestly." 786 F.2d at 306.

14

for the Director of the Illinois Department of Labor to enforce actions under these respective statutes, the IMWL specifically permits the Director to "supervise payment of the unpaid minimum wages and unpaid overtime compensation," *see* 820 ILCS 105/12(b),[11] and, it appears that, in at least one case, a payment under the "supervision" provision of the IMWL led to the release of the employee's claims.[12]

Because releases under the IMWL and IWPCA as well as the FLSA are void as a matter of law, the court grants plaintiffs' motion to void the releases and strike defendants' fourth affirmative defense.

## NOTICE

The plaintiffs also request that the court order a court-approved notice to each person who received a release stating that the release is void in its entirety, that signing it does not prohibit participation in this litigation and defendants cannot retaliate against anyone for participating in the lawsuit.[13] Federal Rule of Civil Procedure 23(d) provides that in the conduct of class actions, "the court may make appropriate orders: . . . requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the

---

[11] The Director is authorized to supervise the payment of the unpaid minimum wages and the unpaid overtime compensation owing to any employee or employees under Sections 4 and 4a of this Act and may bring any legal action necessary to recover the amount of the unpaid minimum wages and unpaid overtime compensation and an equal additional amount as punitive damages, and the employer shall be required to pay the costs. Any sums thus recovered by the Director on behalf of an employee pursuant to this subsection shall be paid to the employee or employees affected. Any sums which, more than one year after being thus recovered, the Director is unable to pay to an employee shall be deposited into the General Revenue Fund. 820 ILCS 105/12(b).

[12] *See Ecker v. Big Wheels, Inc.*, 136 Ill. App. 3d 651, 483 N.E.2d 639, 641-42 (4th Dist. 1985) (affirming district court where an employee had requested the DOL collect his claim, employee accepted payment and district court held that the acceptance of amount determined by DOL constituted an accord and satisfaction and "released the claims").

[13] This court already approved a notice with respect to the FLSA claims that a release does not bar the FLSA suit. *See* Notice of Lawsuit Alleging Violation of Wage and Hour Requirements of Fair Labor Standards Act, December 15, 2000.

15

court may direct to some or all of the members of any step in the action, . . . ." Fed. R. Civ. P. 23(d). Communications that contain incorrect information are particularly a subject of "a curative notice from the court, at the expense of those at fault." *See* MANUAL FOR COMPLEX LITIGATION § 30.24 (3d ed. 1995). Moreover, "[i]f improper communications occur, curative action may be necessary, such as extending deadlines for opting out . . . or voiding improperly solicited opt outs." *Id.* Because the letter and release sent out by defendants contained incorrect information as to the ability to waive the claims at issue in this lawsuit, the court grants plaintiffs' request. *Id.*; *cf. Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478, 498-502 (E.D. Pa. 1995) (second notice and opt-out period to rectify misleading communications warranted even though class was already certified).

## CONCLUSION

For the reasons stated above, the court GRANTS plaintiffs' motion to strike defendants' fourth affirmative defense, void the releases, and require notice be sent regarding the void releases [#57]. The court orders the parties to prepare a notice for court approval informing all potential plaintiffs who have been provided a release that such release is unenforceable in its entirety and otherwise advising them of the opportunity to participate in the lawsuit. A status hearing is set for November 26, 2001 at 9:30 a.m.

ENTER: *[signature]*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: November 7, 2001