Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5755 | **DATE** | 6/25/2004 |
| **CASE TITLE** | Ladegaard vs. Hard Rock Concrete Cutters, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in the Memorandum Opinion and Order, defendants' motion to decertify the class on Counts I and II [100-1] is denied. Status hearing is set for 7/8/04 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUN 2 8 2004 date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | 127 |
| | Copy to judge/magistrate judge. | | | |
| MD | courtroom deputy's initials | 2004 JUN 25 PM 4:42 | 6/25/04 date mailed notice MD mailing deputy initials | |

Date/time received in central Clerk's Office

SEAN LADEGAARD, individually and )
on behalf of a class of employees, similarly )
situated, )
)
    Plaintiff, )
)
v. ) No. 00 C 5755
) Judge Joan H. Lefkow
HARD ROCK CONCRETE )
CUTTERS, INC., et al. )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Sean Ladegaard ("Ladegaard"), filed this action against defendants Hard Rock Concrete Cutters, Inc. ("Hard Rock"), and its principals, James M. Dvoratchek and Peter M. Held, in the Circuit Court of Cook County, Illinois, alleging violations of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.*, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* After defendants removed the case to federal court, this court certified a class of plaintiffs for the IMWL and IWPCA claims. Hard Rock now moves to decertify the class. For the following reasons, Hard Rock's motion is denied.

### DISCUSSION

The FLSA, on one hand, and the IMWL and IWPCA, on the other, differ in their treatment of "class" issues. Section 216(b) of the FLSA provides, "No employee shall be a party plaintiff to any action unless he gives his consent in writing to become a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Thus, the FLSA only

permits collective actions to be maintained on an "opt-in" basis. Rule 23 of the Federal Rules of Civil Procedure, however, permits class actions to be maintained on an "opt-out" basis. Because the IMWL and IWPCA contain no language resembling Section 216(b) of the FLSA, a court may certify a class of plaintiffs under these laws using the "opt-out" procedures of Rule 23.

Ladegaard brings claims under both the FLSA and the IMWL and IWPCA, implicating both opt-in and opt-out procedures. On December 15, 2000, Ladegaard sent a court-approved notice to all individuals who had been employed as hourly-paid concrete cutters for Hard Rock in the three years before the date of the notice -- a total of 65 individuals -- informing them of their right to opt in to the FLSA collective action as a party plaintiff by completing and returning an opt-in form. In response, five current or former employees of Hard Rock opted in to the FLSA claim before the February 15, 2001 deadline. An additional plaintiff was allowed to join the case on August 18, 2001.

Meanwhile, on November 30, 2000, the court certified a class of state law claimants pursuant to Rule 23(b)(3). On April 26, 2001, Ladegaard distributed a court-approved notice to the same 65 current and former Hard Rock employees advising them of their right to "opt out" of the class of state law claimants. Seventeen class members opted out of the class by the June 25, 2001 deadline. This left 47 class members in the case, 41 of whom did not opt in to the FLSA claim.

In opposing Ladegaard's original motion for class certification, Hard Rock argued that potential class members likely would be confused by the successive opt-in/opt-out notices. The court rejected that argument on the record before it at the time, reasoning that "[a]lthough defendants have suggested confusion will result from notice to class members of their right to

2

'opt-in' to the FLSA action and 'opt-out' of the Rule 23 state claims, plaintiff has indicated that this will not be a major obstacle because his attorneys have drafted such joint notices (supervised by other courts in this district) in the past." *Ladegaard* v. *Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2000 WL 1774091, at *7 (N.D. Ill. December 1, 2000). The notice explained,

> You may have already received a notice dated December 15, 2000 to join (or "opt-in") to the Fair Labor Standards Act (FLSA) law suit against the Defendants. Please be advised that this notice is to inform you of an entirely different and separate claim. Whether you have or not opted into the FLSA law suit does not affect your rights to be a party to the Illinois Minimum Wage Act and Wage Payment and Collection Act lawsuit.

Of the 47 class members who did not file an opt-out notice before the June 25, 2001 deadline, 20 have since expressed a desire to opt out of the case. Two employees completed opt-out notices, but neither notice was postmarked before the deadline. Eighteen additional class members have since expressed a desire to opt out. In letters attached as exhibits to Hard Rock's motion, these class members state either that they never received the opt-out notice, that they believed it to be the same thing as the opt-in FLSA notice, and/or that they were confused by the two notices. For example, one employee wrote,

> "I . . . recently discovered that my name is on a list showing that I want to sue Jim Dvoratchek and Pete Held and Hard Rock Concrete Cutters. I only received one notice which needed to be sent in to join. I threw it out. I want nothing to do with this suit. I never received a second notice last spring. I would have sent it back or done whatever was required to stay out of this suit."

Another employee stated,

> "I never intended to be involved in this lawsuit. When letters came to my house from [plaintiffs' counsel] Jack [*sic*] Cotiguala I thought they were asking me to be part of the suit. I threw all of the letters out not understanding them." Another wrote, "The initiators of this lawsuit sent misleading letters to the homes of other workers in an attempt to gather a greater number of people to join the lawsuit. The first letter, explaining the reasoning of the lawsuit, asked the other employees

3

> to send in a response if they wished to join. The second letter asked the employees to send in a response if they wished *not* to join. I did not read this carefully enough, and mistakenly threw the second letter away."

Just as it is possible that other class members who failed to return the opt-out notice chose to stay in the law suit, it is possible that a number of other class members failed to return the notice because they did not read or failed to understand the notice. *See Mueke* v. *A-Reliable Auto Parts & Wreckers, Inc.*, No. 01 C 2361, 2002 WL 1359411, at *2 n. 3 (N.D. Ill. June 21, 2002)("In the Court's experience, few if any persons who receive notice of a class action opt out; though one could argue that this is because the vast majority of notice recipients make an affirmative decision to stay in the case, it is just as likely that the tiny number of opt-outs occurs because recipients ignore the notice (believing it to be 'junk mail') or once seeing it, do not bother to read it."). In general, the court will assume that the class members are literate and able to understand a notice such as the opt-out notice.

Rule 23 allows suits to go forward as class actions only if "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. Pro. 23(b)(3). Hard Rock argues that the correspondence from class members expressing a desire to be removed from the case demonstrates that a class action in this case is not superior to other available methods -- specifically, the Section 216(b) opt-in procedure of the FLSA -- for the fair and efficient adjudication of the controversy. Further, Hard Rock argues that the correspondence demonstrates that Ladegaard no longer will fairly and adequately protect the interests of the class.

Plaintiffs respond to this argument by suggesting that the class members who expressed a desire to remove themselves from the case were paid off, threatened with economic pressure from Hard Rock, or improperly contacted by defendants or their attorneys. Plaintiffs argue, for

instance,

> A reading of the correspondence . . . from the potential class members who allegedly wish to "voluntarily" opt out of the class reveals that shortly before sending that correspondence, they learned (because it was "brought to their attention") that they were part of the state law class because their name was "on a list." A great many of the letters state that the state class notice had been thrown out months before but these workers somehow collectively "learned" of their participation in the class. One such letter tells us how these workers might have "learned" of their name being on the "list." Mr. Leo Worth stated in his August 29, 2001 letter: "Pete and Jim . . . as per my conversation with Jimmy last week" that he felt the need to "set the record straight that . . . this lawsuit is frivolous and unfounded."

(Pl. Memo in Opp'n, at 2.) Plaintiffs then point out that the individual defendants names are "Pete" Held and "Jim" Dvoratchek and that neither the court nor plaintiffs' counsel distributed any "list" of class members.

Plaintiffs also suggest that the correspondence reveals "that some type of settlement of the amounts owed might have taken place between some of the unnamed class members and the Defendants . . . ." Plaintiffs continue,

> Some other examples of the employees "learning" of a "list" and receipt of settlement money are: "I have *recently been informed* that I was on some sort of list that is in the process of suing Hard Rock Concrete Cutters, Inc. . . . I have received all money earned within my time for working for my employers (Jim Dvoratchek and Pete Held) so please remove my name that is any list having to do with any lawsuit . . . Paxton Willis" (Undated); "It has *come to my attention* that I, an employee of Hard Rock, am still listed on the lawsuit. . . . I have been properly compensated for all hours that I have worked at Hard Rock. . . . Again, I am asking to have my name removed from your list. . . . William Seehafer." (Dated March 6, 2002); "I have been satisfactorily compensated for all work that I have completed. . . . Brian Ruhl" (dated February 25, 2002).

(Pl. Memo. in Opp'n, at 2-3; emphasis in Memo, but not in original correspondence.) Plaintiffs contend that even more "disturbing facts" arose from telephone conversations that plaintiffs' counsel had with some of the letter writers. Plaintiffs' counsel spoke to one individual who said that he wanted to participate in the state portion of the lawsuit but did not want to be included in

5

the federal portion. Another correspondent informed plaintiffs' counsel that "Defendants" told him to send back the second notice of class action to opt out of the lawsuit. "When questioned further the caller appeared agitated and wouldn't go into details about who told him to send back the notice." (Galovich Aff. ¶ 3.)

That Jim Dvoratchek engaged in any conversation with class members about the lawsuit is problematic because he has power over their livelihood. No matter how evenhanded he may have tried to be, the situation inheres with the possibility that the employees felt coerced.[1] Even if it is true that a number of the employees actually initiated the conversation about the law suit without any provocation, plainly Dvoratchek talked about the law suit knowing that the court had previously directed Hard Rock's representatives not to communicate with potential class members about the law suit.[2] Dvoratchek states that he told individuals who did not want to be in the law suit they "should write a letter to the judge" or "write a letter to [Dvoratchek], and [he] would see to it that it got into the right hands." Dvoratchek Declaration ¶¶ 4, 6. Dvoratchek

---

[1] A determination of whether questioning tends to be coercive is made by examining the following factors: (1) the history of the employer's attitude toward its employees; (2) the type of information sought or related; (3) the company rank of the questioner; (4) the place and manner of the conversation; (5) the truthfulness of the employee's responses; (6) whether the employer had a valid purpose in obtaining the information; (7) if so, whether this purpose was communicated to the employee, and (8) whether the employer assures employees that no reprisals will be taken if they support the union. The proper application of this rule ensures a focus upon the relevant inquiry of whether the questioning tends to be coercive, as opposed to whether the employee was actually coerced.

*Lord & Taylor* v. *N.L.R.B.*, 703 F.2d 163, 166 (5th Cir. 1983) (internal citation omitted).

[2] On October 5, 2000, after learning that Hard Rock had obtained releases from some potential class members/opt-in plaintiffs shortly after the case was filed, the court ordered, "Pending disposition of the motion for class certification, defendants represent on the record that they will not contact potential class members with respect to any matter relating to this law suit." From this it is clear that defendants knew that represented parties were to be contacted concerning the law suit only through counsel.

identifies five employees with whom he spoke in "casual conversation" about the lawsuit who appeared concerned that the cost of the litigation might cost them their jobs. ¶ 4. Another conversation occurred in connection with someone seeking reemployment. Dvoratchek admits that he initiated contact with "some current and former employees whom [he] believed were friendly with [him] and thus unlikely to want to sue [him]." ¶7. "Having them stay in the case if they do not want to be in it does not help them or me." Even if Dvoratchek believed his contacts were innocent, any class member in the situations described would have known that a letter expressing a desire to opt out would please Dvoratchek.

This leads to two issues: first, whether the fact that only six people opted in after receiving the first notice shows that a class action is not a superior method of adjudicating the class members' claims, and second, what consequences should flow from the above-described events.

A court has broad discretion in determining whether class certification is proper. *Keele* v. *Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). The court's initial determination to certify a class is "inherently tentative," and the court "remains under a continuing obligation to review whether proceeding as a class is appropriate." *Ellis* v. *Elgin Riverboat Resort*, 217 F.R.D. 415, 419 (N.D. Ill. 2003)(quoting *Coopers & Lybrand* v. *Livesay*, 437 U.S. 463, 469 n.11 (1978)); *see also Binion* v. *Metropolitan Pier and Exposition Authority*, 163 F.R.D. 517, 520 (N.D. Ill. 1995)(the court "remains free to modify or vacate a certification order if it should prove necessary").

The court acknowledges the three cases decided since this court's class certification ruling in 2000 that have held that a class action is not a superior method of adjudicating state law wage and overtime claims when such cases also include a FLSA claim covering the same

7

conduct. *Mueke v. A-Reliable Auto Parts & Wreckers, Inc.*, No. 01 C 2361, 2002 WL 1359411, at *2 (N.D. Ill. June 21, 2002) (Judge Kennelly)(refusing to certify a state law overtime class action under Rule 23(b)(3)); *Thiebes v. Wal-Mart Stores, Inc.*, No. CIV. 98-802-KI, 2002 WL 479840, at *3 (D.Or. Jan. 9, 2002)(same); *De la Fuente v. FPM Ipsen Heat Treating, Inc.*, No. 02 C 50188, 2002 WL 31819226, at *2 (N.D. Ill. Dec. 16, 2002)(Judge Reinhard)(same). One reason for these courts' refusal to certify a class was their concern that potential class members would be confused by the successive opt-in/opt-out notices. *See De la Fuente*, 2002 WL 31819226, at *2 (criticizing *Ladegaard*, 2000 WL 1774091, and stating, "a notice that calls both for a decision to opt-in to a collective action and also whether to opt-out of the class action . . . seems an inherently difficult task . . . [to do] in a non-confusing manner."); *Thiebes*, 2002 WL 479840, at *2 ("I believe it would be difficult to fashion an effective notice to prospective class members that explains their opportunity to opt in to the FLSA collective action as well as their choice to opt out of the class action."). Although the court concedes that the two notices may have been more confusing than it originally anticipated, it does not agree that it is appropriate to deny class certification as a result. Both the FLSA and the counterpart Illinois laws are remedial legislation. Remedial legislation is to be liberally construed in favor of its beneficiaries. *See Hodgson v. University Club Tower, Inc.*, 466 F.2d 745, 746 (10th Cir. 1972)(citing *Mitchell v. Lublin McGaughy & Assoc.*, 358 U.S. 207, 211)). The confusion caused by the two notices is a result of the vicissitudes of federal jurisdiction, which defendants invoked by way of removal, but it does not prejudice any of the employees involved. Those who chose to opt out of the Illinois claims were given the opportunity to do so, and seventeen did (which is evidence that the notice was understandable). That fewer employees opted in than out might show, rather than

8

confusion, a greater willingness to assert a claim if it can be done without making an affirmative challenge, *i.e.*, passively and anonymously. Furthermore, if at the end of the case, liability is determined, notice will be sent to the class as to the opportunity to receive an award. Any class member who believes that receiving the award is not in his best interest remains free to reject the award. In sum, the court will not decertify the class merely because there is not a perfect fit between the two classes.

Underlying the defendants' argument for decertification based on the belated opt-out letters is the question of whether the class is still so numerous that joinder of all members is impracticable. As previously stated in the decision certifying the class, the court used a benchmark of 40 as the threshold for numerosity. Decision of Nov. 19, 2000, at 7. The court will disregard any opt outs that were generated after the closing date because all are late and most are tainted. That leaves 47 in the class, which is sufficient to satisfy numerosity.

Hard Rock also contends that decertification should be ordered because the class representative can no longer fairly and adequately represent the class where a substantial number of class members are opposed to the litigation. The court will not entertain this argument in light of Hard Rock's participation in stirring up the opposition. The court's greater concern is that Hard Rock neither initiate nor entertain further contacts with members of the class concerning the lawsuit other than by defendants' counsel through plaintiffs' counsel. Indeed, the court will so order and will consider any further contacts as grounds for a rule to show cause why defendants should not be found in contempt of court.

Finally, it appears that members of the class could be well served by a communication from the court explaining to class members that their questions about the law suit should be

directed to plaintiffs' counsel rather than representatives of their employer; that the court has seen letters expressing a desire to opt out of the law suit but has decided that anyone who sent a letter after the June 25, 2001, deadline remains a member of the class; nevertheless, at some time in the future, should the court enter a judgment in plaintiffs' favor, they will be given notice of what their potential award would be and an opportunity to reject such an award if they voluntarily choose to do so.

## CONCLUSION

Defendants' motion to decertify the class on Counts I and II is denied [#100]. Pending disposition of this law suit, defendants and their agents are directed not to initiate or entertain, directly or indirectly, conversations with any class members with respect to any matter relating to this law suit. Plaintiffs counsel shall draft a proposed notice to class members and serve it on defendants' counsel. The parties shall endeavor to reach agreement on a notice that can be sent to all class members by July 15, 2004. This case will be called for status on July 8, 2004, at 9:30.

Date: June 25, 2004         Enter: _____
                            JOAN HUMPHREY LEFKOW
                            United States District Judge