## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5755 | **DATE** | 8/17/2004 |
| **CASE TITLE** | Ladegaard vs. Hard Rock Concrete Cutters, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. For the reasons stated in the Memorandum Opinion and Order, defendants' motion for partial summary judgment [98-1] is granted in part and denied in part, and plaintiff's motion for partial summary judgment [96-1] is granted in part and denied in part. Status hearing is set for 8/31/04 at 9:30 a.m. to set a date for trial.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 18 2004 | |
| | Notified counsel by telephone. | | date docketed | 129 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 8/17/2004 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SEAN LADEGAARD, individually and on behalf of a class of employees, similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>HARD ROCK CONCRETE CUTTERS, INC., et al.<br><br>    Defendants. | No. 00 C 5755<br>Judge Joan H. Lefkow |

DOCKETED
AUG 1 8 2004

**MEMORANDUM OPINION AND ORDER**

This case involves allegations that defendants, Hard Rock Concrete Cutters, Inc. ("Hard Rock"), James M. Dvoratchek ("Dvoratchek"), and Peter M. Held ("Held"), failed to pay hourly employees wages and overtime for compensable work time (preparation, travel, and cleanup) before and after the period of the workday that Hard Rock considered to be compensable time. Plaintiffs' Third Amended Complaint contains four counts. Count I asserts that defendants' alleged failure to properly compensate its employees violated the minimum wage and overtime pay requirements of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.* Count II is a claim for unpaid wages under the Illinois Wage Payment Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq.* Counts III and IV assert that defendants' alleged failure to properly compensate its employees violated the minimum wage and overtime pay requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206-07. Count IV alleges that the FLSA violations were willful. Before the court are cross-motions for partial summary judgment. The parties do not attempt to resolve questions regarding particular uncompensated time worked by specific

129

employees. Rather, the parties' arguments focus on which categories of alleged work time are compensable under the federal and state statutes that plaintiffs invoke. For the reasons stated below, plaintiffs' motion for partial summary judgment is granted in part and denied in part. Defendants' motion for partial summary judgment is granted in part and denied in part.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-599. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## FACTS

Hard Rock is engaged in the business of cutting concrete. Peter Held ("Held") is the president and a shareholder of Hard Rock. James V. Dvoratchek ("Dvoratchek") is the secretary-treasurer and a shareholder of Hard Rock. Held and Dvoratchek have authority over the pay practices of Hard Rock.

Plaintiffs are current and former employees of Hard Rock.[1] From July 19, 1997 through August 2001, the hourly wage plaintiffs received for "covered work" under their collective bargaining agreements ranged from $14.90 to $30.41. The number of hours plaintiffs worked per week varied substantially per week and per plaintiff. Plaintiffs did not always work forty hours in a week. Plaintiffs recorded and submitted their own time sheets.

Hard Rock employs both "driver-operators" ("drivers") and "helpers." Drivers drive company vehicles to and from the job site. Although drivers are allowed to bring their assigned vehicles home at night, some drivers park the vehicles in the yard at night. Drivers pick these vehicles up on the morning of the following workday. Helpers are supposed to meet drivers with whom they are paired at the job site. Drivers may pick up helpers at Hard Rock's yard if it is convenient for the driver.

---

[1] As to Counts I and II, a 47-member class has been certified pursuant to Fed. R. Civ. P. 23(b)(3). *See Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2004 WL 1459486, at *1 (N.D. Ill. June 28, 2004). The class is defined as

> former and current driver-operators and helpers who have not been paid for wages and overtime for time loading and unloading trucks and driving to the work site at the beginning of the work day, time spent driving from the job site back to the yard and loading and unloading equipment at the end of the work day, and time spent attending mandatory monthly safety meetings for the period of August 15, 1997 to the present.

*Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2000 WL 1774091, at *8 (N.D. Ill. Dec. 1, 2000). Six employees "opted in" to the FLSA action pursuant to 29 U.S.C. § 216(b). *See Ladegaard*, 2004 WL 1459486, at *1.

3

Most Hard Rock employees – drivers and helpers – travel directly from their homes to the first job site of the day, and from the last job site of the day to their homes. However, drivers occasionally need to stop by Hard Rock's yard prior to traveling to the job site to perform some or all of the following tasks: picking up work orders; filling water tanks and portable gas tanks on work trucks; picking up additional equipment necessary for the day's work; hooking up trailers needed for work; and performing safety and operational checks on the vehicles and trailers.[2] Following the work day, drivers occasionally need to stop by Hard Rock's yard to drop off vehicles or equipment for repair or to turn in completed work orders. Debris such as concrete slabs removed from the work site are also unloaded at this time.[3] Helpers occasionally perform some of these tasks. Hard Rock also asks drivers to have the oil changed in their assigned vehicles on a regular basis. Two supervisory employees were usually at Hard Rock's yard in the morning when work crews would be arriving and departing from the yard: Ken Leazer and Mike DeBartolo. Held was also there occasionally. (Dvoratchek Dep., at 48-49.) Some supervisory employees were also at the yard at the end of the workday, usually until approximately 5:30 pm. (*Id.* at 101.)

Prior to September 2000, Hard Rock's policy was to pay employees only for time spent at job sites and not for time spent at the beginning of the workday driving to a job site nor for time at the end of the workday driving from a job site. Plaintiffs were aware of this policy. There were two exceptions to this policy. First, if the drive time to the first job site exceeded one hour, as measured from Hard Rock's yard, Hard Rock paid the driver his regular hourly wage for the

---

[2] This type of activity will be referred to as "preparation."

[3] This type of activity will be referred to as "cleanup."

4

total drive time, regardless of whether the driver had worked more than forty hours in the week. (Pl. L.R. 56.1 ¶ 49.) Second, if a driver came to Hard Rock's yard for preparation or cleanup before going to the first job site, Hard Rock paid him for all time spent, not just time in excess of one hour, traveling between the yard and job site if the driver reported this time on his time sheet. Hard Rock also contends that drivers who reported time spent having the oil changed on a company vehicle were paid for that time.

However, Hard Rock never informed its employees that they would be paid for time spent in preparation, travel, or cleanup nor instructed them to report such time worked on their time sheets. Hard Rock also never instructed employees to report time spent having the oil changed in company vehicles. "Employees learned how to put down time on their time sheets from what other employees told them to do." (Pl. L.R. 56.1 ¶ 44.) Factual disputes exist as to whether plaintiffs were compensated for all hours worked. Held testified that he had no records reflecting the number of hours plaintiffs worked for which they would have been paid had they reported their hours. However, Hard Rock's payroll records reflect that some plaintiffs received straight time rather than overtime pay for hours worked in excess of forty.[4] Factual disputes exist as to how often this occurred.

## DISCUSSION

Plaintiffs contend that they were not properly compensated for certain preparation, travel, and cleanup time. Plaintiffs seek compensation at their regular rate of pay for all such

---

[4]Hard Rock disputes this fact. However, Hard Rock's payroll records clearly support the statement. (Pl. L.R. 56.1, Ex. E.) Hard Rock's purported dispute is more in the nature of an explanation for why the information contained in the payroll records does not constitute a violation of the overtime provisions of the FLSA and IMWL. This is discussed below, sec IV.

5

uncompensated work performed in weeks in which plaintiffs did not work in excess of 40 hours ("straight time compensation") and at one and one-half times their regular pay for all such work performed in weeks in which plaintiffs worked over 40 hours ("overtime compensation"). Plaintiffs argue that, as to all counts, they are entitled to summary judgment on liability for the time period from August 15, 1997 through September, 2000. Defendants contend that they are entitled to summary judgment on plaintiff's claims for (1) straight time compensation; (2) punitive damages under the IMWL; and (3) a three-year statute of limitations under the FLSA.

## I. "Principal Activity" Under the FLSA and IMWL

Under the FLSA, any time an employee spends performing the "principal activity or activities which such employee is employed to perform" is compensable. 29 U.S.C. § 254(a). "Principal activities" include all activities which are an integral part of the principal activity. *See* 29 C.F.R. §§ 785.24. An activity is integral to a principal activity if

> ... the activity is made necessary by the nature of the work performed, it fulfills mutual obligations between the employer and his employees, the activity directly benefits the employer in the operation of his business, and the activity is closely related to other duties performed by the employees. Thus, in order for a particular activity to be "integral and indispensable," it must be necessary to the principal activity performed and done for the benefit of the employer.

*Gonzalez* v. *Farmington Foods, Inc.*, 296 F. Supp. 2d 912, 924-25 (N.D. Ill. 2003)(internal citations omitted). The IMWL generally tracks the provisions

Here, the predominant activity of Hard Rock's employees was cutting concrete. Having tools, supplies and equipment available and properly functioning, having water necessary for performing the cutting process, unloading debris, cleaning equipment, and completing paperwork were all activities necessary for the predominant activity of concrete cutting. All these activities

benefitted Hard Rock. Thus, on any day that a Hard Rock employee performed some preparation at the yard, his time spent performing that activity and the travel time from the yard to the job site is compensable under the federal and state statutes. Similarly, on any day that a Hard Rock employee performed some cleanup in the yard, his time spent performing that activity and the travel time from the last job site to the yard is covered by the statutes. *See O'Brien* v. *Encotech Construction*, No. 00 CV 1133, 2004 WL 609798, at * 9 (N.D. Ill. Mar. 23, 2004); 29 C.F.R. § 785.38 ("Where an employee is required to report at a meeting place to receive instructions or to perform work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work and must be counted as hours worked . . . ."). However, travel time is not covered by the statutes if the employee did not perform any preparation before traveling to the job site or if the employee did not perform any cleanup after leaving the job site. *See* 29 U.S.C. § 254(a)(excluding from FLSA coverage hours during which an employee is "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform"); *Baker* v. *GTE North Inc.*, 110 F.3d 28, 29 (7th Cir. 1997).

Courts have generally held that the IMWL parallels the FLSA, and the Illinois Administrative Code provides that FLSA regulations provide guidance in interpreting the IMWL. *Haynes* v. *Tru-Green Corp.*, 507 N.E.2d 945, 951 (Ill. App. 4th Dist. 1987), *appeal denied*, 515 N.E.2d 123 (1987). Thus, the same analysis generally applies to both the FLSA and IMWL. *Id.*; *O'Brien*, 2004 WL 609798, at * 7; *Labov* v. *Alex Displays, Inc.*, No. 02 CV 8721, 2003 WL 21209854, at * 2 (N.D. Ill. May 21, 2003).

Plaintiffs contend that "it is undisputed that some, if not most of the hours spent on

7

performance of these tasks and the time to drive to and from the site were uncompensated." (Pl. Mot. for Summ. J., at 5.) In fact, Hard Rock does dispute this issue, arguing that it paid plaintiffs for all hours *reported on their time sheets*. (Def. Resp., at 2.) However, Hard Rock cannot escape its responsibility to pay employees for all time worked by relying solely on the hours reported on employees' time sheets. Under both the FLSA and IMWL, employers, not employees, have a duty to keep accurate records of all hours worked by their employees. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); 820 ILCS 105/8. Thus, any time an employee spent performing principal activities is covered by the statutes whether or not the employee reported the time on his time sheet. Still, plaintiffs bear the burden of proving they performed work for which they were not properly compensated. *Anderson*, 328 U.S. at 686-87. The factual issue of how often this occurred shall remain for trial by whatever methods the parties employ to reconstruct uncompensated, unreported work time for each plaintiff.

Hard Rock contends that time helpers spent in preparation, cleanup, and traveling between the yard and job site is not compensable because Hard Rock did not require helpers to report to the yard and the activities performed there could have been performed at the job site. Hard Rock's argument is unavailing. The regulations provide that "[w]ork not requested but suffered or permitted is work time." 29 C.F.R. § 785.11. "It is the duty of management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them." *Id.* § 785.13. Work is not considered to have been "suffered or permitted" unless the employer knew or should have known that it was being performed. *Id.* § 795.11; *Cunningham v. Gibson Electric Co.*, 43 F. Supp. 2d 965, 975 (N.D. Ill. 1999). Knowledge of a supervisor is imputed to the employer, and it

8

is sufficient that a manager or supervisor, acting with reasonable diligence, had the opportunity to acquire the knowledge. *Cunningham*, 43 F. Supp. 2d at 975 (quoting *Reich v. Dep't of Conservation & Natural Resources*, 28 F.3d 1076, 1082 (11th Cir. 1994)). Here, Dvoratchek testified that as many as three supervisory employees were regularly at the yard during times when employees were performing preparation work for the work day. (Dvoratchek Dep., at 48-49.) Some supervisory employees were also at the yard at the end of the workday. (*Id.* at 101.) Consequently, some supervisory employee had the opportunity to observe that helpers were performing preparation and cleanup activities. Thus, these activities are covered by the statutes.

## II. FLSA and IMWL Straight Time Claims

Plaintiffs claim that Hard Rock's alleged failure to pay them at their regular rate of pay for all compensable work performed in weeks in which plaintiffs did not work in excess of 40 hours violates the minimum wage provisions of the FLSA, 29 U.S.C. § 206, and the IMWL, 820 ILCS 105/4. Hard Rock argues that none of the plaintiffs are entitled to damages based on a violation of the minimum wage provisions of the FLSA or IMWL because every plaintiff's average hourly pay for any given work week always exceeded the minimum wage. For example, if an employee was paid $320.00 based on a pay rate of $10.00 per hour for 32 hours of work, but should have been considered to have performed an additional eight hours of compensable preparation, travel, and cleanup work, the employer has not violated the FLSA's minimum wage requirements because the employee received $320.00 for 40 hours of work, an average of $8.00 per hour and above the applicable minimum wage of $5.15 per hour.

Courts have used the term "gap time" to refer to "time that is not covered by the overtime provisions because it does not exceed the overtime limit, and . . . time that is not covered by the

minimum wage provisions because, even though the work is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked." *Adair v. City of Kirkland*, 185 F.3d 1055, 1062 n.6 (9th Cir. 1999). In two recent cases, this court has applied a "gap time" analysis and held that a plaintiff cannot state a claim under the FLSA or the IMWL if he, working less than 40 hours per week, receives payment in excess of what he would have been paid had he worked 40 hours per week at minimum wage. *O'Brien v. Encotech Construction*, No. 00 CV 1133, 2004 WL 609798, at * 6-7 (N.D. Ill. Mar. 23, 2004)(Gottschall, J.); *Sherman v. Premium Concrete Cutting, Inc.*, No. 01 CV 7263, 2004 WL 1510030, at * 2-3 (N.D. Ill. July 6, 2004)(Norgle, J.); *see also Cuevas v. Monroe Street City Club, Inc.*, 752 F.Supp. 1405, 1416-17 (N.D. Ill. 1990). Cases from around the country have reached the same result. *See United States v. Klinghoffer Brothers Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960); *O'Brien v. Town of Agawam*, 350 F.3d 279, 298 (1st Cir. 2003); *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1270 (4th Cir. 1996); *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986); *Dove v. Coupe*, 759 F.2d 167, 171-72 & n.8 (D.C. Cir. 1985). The court will follow these cases. Because plaintiffs have presented no evidence that any plaintiff received pay for a work week of 40 hours or less that averaged below the statutory minimum wage, defendants are entitled to summary judgment on plaintiffs' straight time claims under the FLSA and IMWL.

### III. IWCPA Straight Time Claims

Even if defendants did not violate the minimum wage provisions of the FLSA and IMWL, plaintiffs argue that they nevertheless are entitled to compensation under the IWCP because Hard Rock breached a contractual obligation to pay employees for all travel time to the

first and from the last job site of the day. The IWCPA requires that employers pay employees "all wages earned" or "final compensation." 820 ILCS 115/3-115/5. It defines "wages" as "any compensation owed an employee by an employer *pursuant to an employment contract or agreement between the 2 parties.*" 820 ILCS 115/2 (emphasis added). The problem with plaintiffs' argument is that they have failed to identify any provision of their collective bargaining agreement with Hard Rock requiring Hard Rock to pay its employees for such travel time.[5] In fact, plaintiffs admit that "Hard Rock never promised to pay for travel time between the yard and their first job site or between their last job site and the yard." (Def. L.R. 56.1 ¶ 13-14 and Pl. Resp.) Instead, plaintiffs argue that Hard Rock established an "employment contract or agreement" to pay them for all travel time by consistently paying them the then-current contract rate of pay for travel time over one hour. Plaintiffs contend, "Once defendants regularly paid recognized travel time at the contract rate, it became part of the terms and conditions of plaintiffs' employment." (Pl. Resp., at 9.)

Hard Rock's decision to pay its employees the contract rate of pay for all travel time over one hour does not mean that therefore it agreed to pay its employees the contract rate of pay for travel time less than one hour. The conclusion simply does not follow from the premise. An employer is permitted to set separate rates for different kinds of work, and does not have to pay the regular hourly rate for every hour worked. *See* 29 U.S.C. § 207(g)(2) (requiring employers to

---

[5] Furthermore, if such a provision exists in plaintiffs' collective bargaining agreement, then plaintiffs' IWPCA claim is likely pre-empted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). A state claim is preempted under § 301 "when the provision of a collective bargaining agreement is the subject of the dispute or the dispute is substantially dependent on an analysis of the collective bargaining agreement." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987). Courts have specifically held that claims under the IWPCA that require an interpretation of the collective bargaining agreement are preempted by the LMRA. *Duerr v. Minnesota Mining and Manufacturing Co.*, 101 F. Supp. 2d 1057, 1060 (N.D. Ill. 2000).

11

pay overtime "in the case of an employee performing two or more different kinds of work for which different . . . hourly rates have been established"). Here, Hard Rock agreed to pay its employees at the regular contract rate for all travel time over one hour. No more. No less. Thus, defendants are entitled to summary judgment on plaintiff's straight time claims under the IWCPA.

## IV. FLSA and IMWL Overtime Claims

Plaintiffs argue that Hard Rock's payroll records show that in some weeks in which plaintiffs reported more than 40 hours worked, Hard Rock paid plaintiffs straight time rates and not the overtime rates required by statute. Hard Rock does not dispute that in weeks in which plaintiffs worked more than 40 hours (including previously unpaid preparation, travel and cleanup time), plaintiffs are entitled to all hours up to 40 hours being paid at regular rates and hours above 40 hours being paid at one and one-half times regular rates. *See* 29 C.F.R. § 778.315; *Reich v. Midwest Body Corp.*, 843 F. Supp. 1249, 1251-52 (N.D. Ill. 1994). Hard Rock argues, however, that the occasions on which it paid straight-time wages for hours in excess of 40 hours per week were proper for three reasons.

First, Hard Rock contends that it paid straight-time rates for reported hours in excess of 40 when an employee failed to report certain hours in a given week and then reported those hours in the following week. For example, if a plaintiff failed to report having worked for eight hours on a day in week one and later reported those hours in week two, Hard Rock would pay straight time for those hours even if the total reported hours in week two exceeded 40. However, plaintiffs point out that in three of the five instances that Hard Rock offers this explanation, the employee actually reported more than forty hours worked for the previous week. (*See* Def. Resp.

to Pl. L.R. 56.1, Ex. 56, 64, 76.) In those instances, even if Hard Rock did not violate the overtime provisions in the week in which the hours were reported, it violated them in the previous week.

Second, Hard Rock claims that certain hours over 40 were "gratuitous pay" for drive times over one hour between the employee's home and the first job site. Hard Rock was not required to pay its employees for drive time between the employee's home and the first job site, and its decision to pay employees for such travel time does not convert that time into "hours worked" for FLSA purposes. However, as explained above, if an employee performed preparation work in the yard before going to the job site, his travel time from the yard to the job site counts toward "hours worked" for FLSA purposes. Similarly, if an employee performed cleanup in the yard after leaving the job site, his travel time from the job site to the yard counts toward "hours worked." *See O'Brien*, 2004 WL 609798, at * 9; 29 C.F.R. § 785.38. Plaintiffs point to several instances in which Hard Rock's claim that hours over forty reported were drive time is contradicted by the employee's time card. For instance, Hard Rock claims that Sean Ladegaard was paid "gratuitous travel pay on June 22, 23 and 25 [1999] for travel between his home and job sites in Western Springs, Illinois and at O'Hare airport." (Held Decl. ¶ 20.) Ladegaard's time card shows, however, that he went to the yard on June 23 to "fix saw," and that he went to the yard on June 25 to "load up 220 saw." (Def. Resp. to Pl. L.R. 56.1, Ex. 17.) On these days Ladegaard apparently did not commute directly from his home to the job site. Thus, his travel time should have been included in the computation of hours worked for overtime purposes. Plaintiffs identify numerous other similar examples. Hard Rock's failure to pay travel time at the overtime rate in these instances is a violation of the overtime provisions of the FLSA

13

and the IMWL.

Finally, Hard Rock contends that certain instances in which payroll records indicate that employees were paid straight time rates for hours in excess of forty were actually hours worked at a double time rate but recorded as straight time hours. Hard Rock pays double time for hours worked on Sundays. It often records such time in its payroll computer system, however, at straight time rates and simply doubles the number of hours worked. For example, if an employee worked three hours on a Sunday, Hard Rock's records would show that he worked six hours at a straight time rate. Plaintiffs admit that this explanation is valid in three instances in which Hard Rock raises it.

Hard Rock has, however, failed to pay overtime rates for hours worked in excess of forty in at least some instances and thus violated the overtime provisions of the FLSA and IMWL. Nevertheless, at trial plaintiffs will bear the burden of proving each specific instance of inadequate compensation. *Anderson*, 328 U.S. at 686-87.

## V. Willfulness

Finally, plaintiffs contend that Hard Rock's violations of the overtime provisions of the FLSA and IMWL were willful. A showing of willfulness is required both for a three-year statute of limitations for the FLSA claim, 29 U.S.C. § 255(a), and for punitive damages for the IMWL claim, 820 ILCS 105/12(a). In *McLaughlin v. Richland Shoe Co.*, 485 US 128, 133 (1988), the Supreme Court held that the standard for willfulness under the FLSA is "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Hard Rock was aware of its duty to pay overtime rates for hours worked over forty in a week. It did so often. Yet Hard Rock's own payroll records reveal several instances in which it

failed to do so. While this is insufficient, in itself, to establish willfulness, it does raise a question of fact for trial. Thus, Hard Rock's motion for summary judgement on the issue of willfulness is denied.

## CONCLUSION

Defendants' motion for partial summary judgment [#98] is granted in part and denied in part. Defendants' motion is granted as to plaintiffs' FLSA, IMWL, and IWPCA claims for straight time compensation for all weeks in which plaintiffs worked less than forty hours. It is denied as to plaintiffs' claim that defendants' violations of the overtime provisions were willful.

Plaintiffs' motion for partial summary judgment [#96] is granted in part and denied in part. Plaintiffs' motion is denied as to their FLSA, IMWL, and IWPCA claims for straight time compensation for all weeks in which plaintiffs worked less than forty hours and as to their claims that defendants' violations of the overtime provisions were willful. Plaintiffs' motion is granted as to their claim that defendants violated the overtime provisions of the FLSA and IMWL, but the court's order will not state, as plaintiffs request, that summary judgment on liability is being granted. Rather, this order simply has narrowed the issues remaining for trial. The parties' statements of uncontested facts, statement of contested issues, and proposed jury instructions contained in the final pretrial order must be fully consistent with this ruling, and neither party will be permitted to make any argument that is inconsistent with this ruling. A status hearing will be held on August 31, 2004 at 9:30 a.m. to set a trial date.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: August 17, 2004